# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TRAFFICWARE GROUP, INC.,                                     CIVIL ACTION
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO NAZTEC, INC.

VERSUS                                                       15-106-SDD-EWD

SUN INDUSTRIES, LLC, SUN
ELECTRICAL & INSTRUMENTATION, LLC
AND MERCHANTS BONDING COMPANY

## <u>RULING</u>

This matter is before the Court on the *Motion for Judgment as a Matter of Law Under Rule 50(b) or Alternatively for a New Trial Under Rule 59*[1] filed by Command Construction Industries, LLC ("Command"). Sun Electrical & Instrumentation, LLC ("Sun") has filed an *Opposition*[2] to this motion. Also before the Court is the *Motion For Attorney Fees and Motion to Tax Costs*[3] filed by Command. Sun has also filed an *Opposition*[4] to this motion. The Court heard oral argument on the motion for attorney fees on October 4, 2017. The Court has also considered the Parties' post-trial memoranda in connection with this motion. For the reasons which follow, the Court denies Command's *Motion for Judgment as a Matter of Law Under Rule 50(b) or Alternatively for a New Trial Under Rule 50* but grants the *Motion For Attorney Fees and*

---

[1] Rec. Doc. No. 156.
[2] Rec. Doc. No. 157.
[3] Rec. Doc. No. 150.
[4] Rec. Doc. No. 161.
41734

*Motion to Tax Costs* with adjustments as set forth below.

## I.    BACKGROUND

This matter involves claims arising out of a subcontract between Command and Sun.   Command was the general contractor for a Louisiana State Department of Transportation and Development project known as the LA 431 Intersection Improvements Project.   Sun was a subcontractor to Command relating to traffic signal labor and/or materials with regard to the project, and this relationship is the subject matter of this litigation.   The claims between Sun and Command were tried by a jury from March 27 through March 30, 2017.   A jury returned a verdict primarily in favor of Command, finding that Command did not breach its subcontract with Sun and finding that Command had made all required payments to Sun prior to demobilizing.   The only finding in favor of Sun was the jury's finding that Command caused damage to Sun's conduit on the project in the amount of $20,872.18. The jury also found that Command did not have reasonable cause to withhold payments to Sun after Sun returned to the job in May 2014.   Command now moves for judgment as a matter of law or a new trial and further claims that it is entitled to attorneys' fees and costs under both Louisiana law and the contract governing the relationship between the parties.

## II.   LAW & ANALYSIS

### A.  Motion to Alter or Amend Judgment/Motion for New Trial

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'"[5]   "A Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present

---

[5] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)(quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

newly discovered evidence"[6] and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[7]  "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"[8]   The Fifth Circuit has explained that reconsideration of a judgment after it has been entered under Rule 59(e) "[i]s an extraordinary remedy that should be used sparingly."[9]   As this Court has recently explained, "[w]hile the district courts do have 'considerable discretion in deciding whether to grant or deny a motion to alter judgment,' denial of Rule 59(e) motions to alter or amend is favored."[10]   Command has failed to satisfy the above listed requirements. Accordingly, the Court shall deny Command's *Motion* to alter or amend the judgment.

A motion for new trial is governed by Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure, which states that a district court "may, on motion, grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."   It is left to the district court's "sound discretion" as to whether it will grant or deny a motion for new trial.[11]   Although Rule 59(a) does not list specific grounds for a new trial, the Fifth Circuit has held that a new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are

---

[6] *Advocare Int'l v. Horizon Laboratories, Inc.*, 524 F.3d 679, 691 (5th Cir. 2008) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)(quoting *Simon v. U.S.,* 891 F.2d 1154, 1159 (5th Cir. 1990))).
[7] *Templet*, 367 F.3d at 478-9 (5th Cir. 2004).
[8] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)(quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).
[9] *Templet*, 367 F.3d at 479 (citing *Clancy v. Empl'rs Health Ins. Co.,* 101 F.Supp.2d 463, 465 (E.D.La. 2000)).
[10] *Brown v. Louisiana State Senate*, 2013 WL 5603232, at *1 (M.D.La. Oct. 11, 2013)(quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)).
[11] *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

excessive, the trial was unfair, or prejudicial error was committed in its course."[12]   When a party moves for a new trial on evidentiary grounds, the court will not grant a new trial unless "the verdict is against the great weight of the evidence."[13]   Ultimately, the court must view the evidence in "a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion."[14]   "Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld."[15]

The jury is charged with the responsibility of evaluating the credibility of witnesses and sorting through conflicting testimony. Thus, the mere fact that evidence is conflicting is not enough to set aside the verdict and order a new trial.[16] To the contrary, "the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury."[17]

First, Command contends that the jury ignored the contractual provisions that Command's sworn itemization of damages is presumptively correct.   Command contends that, once the jury determined that Sun defaulted on the contract, Section 22.4 of the contract was triggered and provides that Command's "sworn itemized statement

---

[12] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)(citations omitted); *See also*, *Kohler v. Englade*, 365 F.Supp.2d 758, 761 (M.D.La. 2005).
[13] *Pryor*, 138 F.3d at 1026.
[14] *Dawson v. Wal-Mart Stores*, 978 F.2d 205, 208 (5th Cir. 1992)(citing *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 987 (5th Cir. 1989)).
[15] *Id.* at 208.
[16] *Dawson v. Wal–Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir.1992).
[17] 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2806, at 67 (1995).

thereof of the checks or other evidence of payment ***shall*** be prima facie evidence of the fact and extent of Subcontractor's liability."[18]   Command claims that Sun bore the burden of rebutting the presumptively correct itemization of damages.   Because Sun's evidence in response to this presumption was that Command was entitled to no damages, and the jury did not make that finding, Command claims the jury's damages numbers were "pulled from thin air."[19]   Thus, Command claims that the jury improperly relied on speculation and conjecture in reaching its damages award numbers, and this verdict should be corrected by the Court or retried.

The Court disagrees.   As Sun points out, while Command did present the testimony of Kelly Commander and Patrick Smith on the issue of damages, the jury was free to give any amount of credibility, in whole or in part, to each witness in accordance with the Fifth Circuit Pattern Jury Instructions.   Further, Command's failure to produce evidence or checks of payments for costs incurred could justify the jury's damages award. The Court is not persuaded that the amount of the jury's damages award to Command was improper or constituted manifest error, and the Court will not substitute Command's preferred verdict for the verdict rendered by the jury based on the evidence presented at trial.

Next, Command contends the jury ignored the terms of the contract in awarding Sun damages for the damaged conduit.   Command cites Section 6 of the Subcontract which provides that the subcontractor (Sun) is "solely responsible for all materials,

---

[18] Rec. Doc. No. 156-1, p. 3, quoting Section 22.4 of Subcontract (emphasis original).
[19] *Id.*

equipment and services until the subcontract work is completed to Owner's satisfaction."[20] Command contends that the damage to the conduit was alleged to have occurred between March 2014 and May 2014, the time period when Sun had walked off the project. Further, the DOTD did not issue final acceptance of the project until August 31, 2015, about fifteen months after the alleged damage occurred.   Thus, Command claims that, pursuant to the contract, the risk of loss for the damaged conduit remained on Sun, and the jury ignored the plain language of the contract by awarding Sun damages for the damaged conduit.

Sun contends that the jury's award for the damaged conduit is not inconsistent with the terms of the contract because the damage to the conduit was related to materials and labor which Sun had performed and Command had been paid for by the DOTD.   Thus, the jury could have reasonably interpreted that this portion of work was "completed to Owner's satisfaction" consistent with the terms of the contract.   Because the DOTD had approved and paid for this work, which was later damaged by another party, Sun contends it was no longer responsible for the conduit.   The Court has reviewed the language of the contract and, considering the evidence submitted at trial, it was not unreasonable for the jury to interpret the contract in such a manner.   Command is not entitled to judgment as a matter of law or a new trial on this issue.

Accordingly, Command's *Motion for Judgment as a Matter of Law Under Rule 50(b) or Alternatively for a New Trial Under Rule 59*[21]  is DENIED.[22]

---

[20]  *Id.* at p. 4, quoting Section 6 of Subcontract.
[21]  Rec. Doc. No. 156.
[22]  Command also seeks entry of a judgment in an additional amount of $8,832.00 for another year's bond premium that it must pay as a result of Sun's refusal to remove the lien.   Command admits that this amount was not requested at trial because it did not have the invoice available at the time.   As this issue was never

## B. Motion for Attorney's Fees and Costs

### 1. Entitlement to Attorney's Fees/Prevailing Party Status

The Louisiana Supreme Court noted that "Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract."[23] Further, "[a]ttorney fees are not allowable in an action for breach of contract unless there is a specific provision therefor in the contract."[24]

The 'prevailing party' determination is a clear, mechanical one; when a judgment is entered in favor of a party, it is the prevailing party."[25] Although a plaintiff must obtain merely some relief to be the prevailing party, the crucial factor in determining success is the relief obtained. For example, if a plaintiff recovers only nominal damages, the proper fee usually is none at all, even though the plaintiff has won his case.[26] The Fifth Circuit, interpreting Rule 54(d), has held that:

> A party need not prevail on all issues to justify a full award of costs.... Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d). A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all of his claims. Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.[27]

---

heard or decided by the jury, the Court finds that it is an inappropriate request under Rules 50 and/or 59, and Command's motion is DENIED with respect to the increased bond award under this motion.

[23] *Stutts v. Melton*, 13-557, p. 8 (La. 10/15/13); 130 So.3d 808, 814.

[24] *Hollenshead Oil & Gas v. Gemini Expl.*, 45,389, p. 13 (La.App. 2 Cir. 7/21/10); 44 So.3d 809, 817 (citing *Maloney v. Oak Builders, Inc.*, 235 So.2d 386, 390 (La.1970)).

[25] *Allianz Versicherungs v. Profreight Brokers, Inc.*, 99 Fed.Appx. 10, 13 (5th Cir. 2004) (citing *Baker v. Bowen*, 839 F.2d 1075, 1081 (5th Cir. 1988)); *see also* 10 James W. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 54.101[3] (3d ed. 1998) ("[T]he prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case.")).

[26] *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 678 (5th Cir. 2015)(citing *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

[27] *U.S. v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978) (alterations omitted) (citations omitted) (quotation marks omitted), superseded by statute on other grounds, 42 U.S.C. § 3614; *see also Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 718 (S.D. Tex. 2015).

Command contends it is entitled to recover attorney fees under both statutory[28] and contract law.   In Louisiana, attorney fees are recoverable in breach of contract cases as an element of damages if provided for in the contract.   Under Louisiana law,[29] awards of attorney fees permitted via contracts are subject to the review and control of the courts. Ultimately, the well-known *Johnson* factors[30] apply to aid a court in determining the reasonableness of any such fee.   In support of these factors, Command has attached Affidavits of Craig J. Robichaux[31] and Edward Laperouse[32] giving a precise breakdown of the attorney time spent as well as detailing the *Johnson* factors.

Command maintains that the terms of its subcontract with Sun mandate an award of attorneys' fees to Command.   Command cites Section 11 of the subcontract which states:   "In the event of a dispute, the prevailing party shall be entitled to the reimbursement of all attorney fees involved."[33]   This contractual provision is the "law of the parties" pursuant to La. Civ. Code art. 1983.[34]

Further, Command claims it is undisputed that it is the "prevailing party" in light of the jury's verdict.   Command notes that the jury specifically found that Sun defaulted on

---

[28] Because the Court finds that Command is entitled to attorney fees and costs pursuant to the contract, the Court does not address Command's arguments regarding its statutory entitlement to same.

[29] Command cites a federal Fifth Circuit case interpreting TEXAS law recognizing that, where a prevailing party in a breach of contract suit seeks attorney fees, an award of reasonable fees is mandatory. Rec. Doc. No. 150-1,pp. 3-4, citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[30] The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

[31] Rec. Doc. No. 150-2.

[32] Rec. Doc. No. 150-3.

[33] Rec. Doc. No. 150-4, p. 8, Section 11.

[34] "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La. Civ. Code art. 1983.

its contractual obligations to Command and that Command was not in default of the one contractual issue raised by Sun, timely payment.[35]   Command argues that the only claim on which Sun prevailed was not a contractual claim at all but rather a negligence claim regarding damage to the conduit.   As such, Command contends Sun's conduit claim falls outside of the scope of contractual obligations (as a negligence claim) thus removing any real argument that Command was not the "prevailing party" on the contractual claims. Indeed, the jury sided with Command on every single contractual claim raised.

Command argues that the jury's verdict also "implicate[s] additional bases under the subcontract entitling Command to recover its attorney fees and costs as a result of Sun's action and inactions."[36]   In particular, Section 8 of the subcontract allows Command to recover fees and costs if Sun "fails to remove any improperly filed lien."[37] As the lien remains in place today, and Sun has done nothing to remove or reduce the lien, Command claims it is entitled to recover attorneys' fees and costs under this Section of the subcontract as well.   Command even goes so far as to argue that Sun's sworn statement under oath that its claim in the amount of $1,012,997.24 was mature, which was proven false at trial, is a criminal act pursuant to La. R.S. 14:133.[38]

Additionally, Command claims it is entitled to fees and costs under Section 22.1 of the subcontract which provides for recovery of "all losses, damages, penalties, and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees and costs suffered or incurred by [Command] by reason or as a result of [Sun's] default."[39]

---

[35] *See* Rec. Doc. No. 138.
[36] Rec. Doc. No. 150-1, p. 7.
[37] Rec. Doc. No. 150-4, p. 7, Section 8.
[38] This revised statute is entitled "Filing or maintaining false public records."
[39] Rec. Doc. No. 150-4, p. 10, Section 22.1.

Because the jury specifically found that Sun defaulted on its contractual obligations to Command, Command contends this provision also triggers an award for fees and costs.

Sun contends that Section 11 of the Subcontract does not specify for recovery of "contractual claims" only by the prevailing party and does not define a prevailing party as being the party who did not default on the contract. Sun refers to the "prevailing party" jurisprudence cited in its *Post-Trial Memoranda* and maintains that Command is not a prevailing party in this case.

Sun also rejects Command's contention that it is entitled to attorney fees based on Section 8 of the Subcontract. Sun contends Command did not make a claim or seek to have the lien canceled. Further, the jury was not asked, and thus could not find, that Sun's lien was improper. The jury was not presented Sun's exhibits relating to its claims for several items based on the Court's previous ruling on the *Motion in Limine*. Thus, Sun contends Command is asking the Court to make a finding that it should have presented to the jury. Sun quotes Section 8 as follows: "Under this Subcontract, Subcontractor reserves the right to file a lien if not paid for work performed." Command stipulated that Sun was owed $457,629, and part of Sun's claim was for those sums for which it was entitled to file the lien. Thus, Command is not entitled to attorney fees under Section 8.

The Court finds that Command is the prevailing party for purposes of attorney fees because Sun achieved no success on contract claims. Fifth Circuit jurisprudence supports this finding. In *Merritt Hawkins & Associates v. Gresham*, in interpreting Texas law, the court stated as follows:

The Texas Supreme Court has explicitly stated that "[a] zero on damages necessarily zeros out 'prevailing party' status." Although [Plaintiff] received a judgment that [Defendants] had breached their contracts, [Plaintiff] was awarded no damages or equitable relief on those claims. **The jury's verdict against Consilium does not entitle [Plaintiff] to attorneys' fees because Consilium was not a party to the contracts and because the claim against Consilium was brought in tort, not contract**. Thus, the district court did not abuse its discretion by declining to award [Plaintiff] attorneys' fees for [Defendants'] breach of contract.[40]

Accordingly, because only Command achieved success on claims brought pursuant to the contract, Command is the prevailing party and is entitled to an award of attorney's fees. However, with respect to costs, both parties are prevailing parties, as both Sun and Command achieved some level of success, and the Court finds that an apportionment of costs is proper. Relevant jurisprudence supports the Court's findings as set forth below.

In *Weiser v. Horace Mann Ins. Co.*,[41] the plaintiff achieved only partial success on his claims. The court reduced the award of costs, stating:

In this case, the Court exercises its discretion and denies a full award of pre-offer costs to the prevailing party, Weiser. First, Weiser's recovery was significantly less than his initial claim for damages. *See Champion Produce, Inc. v. Ruby Robinson Co. ., Inc.*, 342 F.3d 1016, 1023 (9th Cir.2003). In his post-trial proposed findings of fact and conclusions of law, Weiser sought $220,651.03 in breach of contract damages and $300,000 in general damages. His ultimate recovery of $4,079.42 is clearly a small fraction of his claimed damages. …

Rather than denying all litigation costs, however, the Court, recognizing that Weiser was partially successful in this litigation, makes a partial award of costs. *See, e.g., Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir.2001) **("[I]n cases in which the prevailing party has been only partially successful, some courts have chosen to apportion costs among the parties or to reduce the size of the prevailing party's award to reflect the partial success."**); *cf. United States v. Terminal Transport*

---

[40]  861 F.3d 143, 156-57 (5th Cir. 2017)(emphasis added)(internal citations omitted).
[41]  No. 06-9080, 2009 WL 5194972 (E.D. La. May 15, 2009)(emphasis added).

*Co., Inc.*, 653 F.2d 1016, 1021 (5th Cir.1981) (upholding award of one-half of special master's cost to non-prevailing party). Accordingly, subject to any reduction in compensable costs by the Clerk of Court, Weiser may recover a maximum of twenty percent of his pre-offer costs, excluding any costs associated with Townsend.[42]

Further, the district court in *Johnson v. Big Lots Stores, Inc.*, recognizing that both the plaintiff and a defendant were prevailing parties, held that: "As both parties have prevailed in some sense in this case, the Court finds it necessary to tax the costs equitably."[43]

Therefore, the Court finds that Command is entitled to an award of attorney's fees and an award of costs proportionate to the partial success achieved in this matter, awarding Command 75% of the costs requested as adjusted below. The Court now turns to the reasonableness of the requested fees and costs.

2. <u>Reasonableness of Fees and Costs</u>

In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorney fees.[44] The "lodestar" analysis involves a two-step procedure.[45] Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the court must multiply the reasonable hours by the reasonable hourly rates.[46] The product is the "lodestar," which

---

[42] *Id.* at *3-*4.
[43] 639 F.Supp.2d 696, 708 (E.D. La. 2009).
[44] *In re Fender,* 12 F.3d 480, 487 (5th Cir.1994), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994).
[45] *La. Power & Light v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir.1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).
[46] *Id.* at 324.

the court either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*[47]

A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous.[48] To determine a reasonable fee, a court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit.[49] The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation."[50]

In assessing the reasonableness of attorneys' fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.[51] The party seeking the fee bears the burden of proof on this issue.[52]

The Court begins by determining whether the number of hours claimed by Command's attorneys is reasonable.[53] Local Rule 54 provides specific guidance

---

[47] 488 F.2d 714, 717–19 (5th Cir.1974).
[48] *Hopwood v. Texas*, 236 F.3d 256, 277, n.79 (5th Cir. 2000); *Hensley*, 461 U.S. at 436–37.
[49] *Hensley*, 461 U.S. at 437–39; *Associated Builders & Contractors v. Orleans Parish School Board*, 919 F.2d 374, 379 (5th Cir. 1990).
[50] *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir.1986).
[51] *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002); *Associated Builders & Contractors*, 919 F.2d at 379; *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998); *Kellstrom*, 50 F.3d at 324.
[52] *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *Kellstrom*, 50 F.3d at 324.
[53] *Migis*, 135 F.3d at 1047.

regarding how this burden is met, stating: "the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof."[54] "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[55]

Command argues for the reasonableness of the fees requested, detailing events surrounding the relationship and litigation going back to the March 2014 job walk-off. Emphasizing the complexity of the litigation and the myriad of legal issues involved in this case, Command contends 1,249.50 hours defending Sun's claims, which is approximately 35 hours per month, is not excessive. Command also contends that the change of counsel in late 2016 necessitated a large amount of time for Counsel Robichaux to get "up to speed" for a quickly approaching march 2017 trial date. Command further maintains much of this time was unbilled.

Command also contends the results achieved at trial weigh heavily in finding the requested fee amount reasonable. Command notes that, "[d]espite *__initiating__* litigation, Sun will walk away from trial less than this stipulated amount even without consideration of Command's attorney fees and costs."[56] Command claims: "It seems quite obvious that the work done in defense of Sun's claims was necessary, reasonable, and done so at a rate well within the range for attorneys of similar skill and expertise. There is simply no basis for reduction of attorney fees when it was Sun's wrongful actions that

---

[54] M.D. La. LR54(b).
[55] *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996) (quotation marks omitted); *see also Kellstrom*, 50 F.3d at 324 ("[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete.").
[56] Rec. Doc. No. 150-1, p. 11 (emphasis original).

necessitated them to begin with. Accordingly, Command prays for judgment awarding it

$269,172.50 under the terms of the contract."[57]

Command makes this final statement regarding costs:

Given the jury's determination that Sun defaulted, it is only equitable that Command be given every benefit of the doubt regarding the reasonableness of the costs incurred as it was defending a claim by Sun for well over $1 million tied to an improper lien, which, if not addressed, would have placed Command in default of its contract with DOTD. After all, the contract between the parties explicitly provides for "all" costs "suffered or incurred."[58]

Sun opposes Command's argument that its fee request is reasonable considering application of the *Johnson* factors. Sun contends Command never performed the reconciliation and initiated litigation by filing suit in the Twenty-third Judicial District Court ("JDC"), State of Louisiana, in February of 2015. Only after Trafficware filed this lawsuit did Command dismiss its suit in the Twenty-third JDC so that all claims could be brought in one forum. Sun contends Command actually had the obligation to perform the reconciliation in August 2015, once the project was substantially completed, and pay Sun the undisputed amounts. At this point, Command's attorney fees are substantially less. Sun argues that it took nearly two years later, a four day trial, and "this Court's persuasion that undisputed amounts be released,"[59] for Command to release $111,000. Sun claims it was entitled to be paid undisputed amounts in August of 2015; thus, it is unreasonable to now permit Command to recover attorney fees in the amounts sought after holding Sun's money for all these years whilst incurring greater attorney fees.

---

[57] *Id.* at p. 12.
[58] Rec. Doc. No. 150-4, p. 8, Section 11.
[59] Rec. Doc. No. 161, p. 3.

Sun further contends that the following billing entries appear questionable: John Milazzo, Jr. charged $240/hour on 3/28/16 but only $200/hour for other entries; there is no indication who Kellie Taylor or Kari Bergeron are or their years of experience; Associate Molly Manieri's hourly charge appears to be the same as the partners; several entries by Talley Anthony are for reviewing Taylor Porter documents and discussions with Taylor Porter attorneys; there appears to be a large, unexplained copying charge when Talley Anthony took over the file which Sun should not be assessed for including numerous postage and overnight service fees; some entries relate to issues Command had only with Merchants, and Sun contends it should not be assessed for same; Sun should not be obligated for time spent with Command's exhibit presentation coordinator; and there are "numerous" charges by Taylor Porter for extended periods of time before Trafficware filed suit and the records contain numerous duplications of charges. Sun contends that Command's current counsel have not reduced their fees to take into consideration unrelated and/or not properly included billings, and "it is quite clear that present counsel for Command had to duplicate efforts already taken by Command's prior counsel in taking over the case in the last hour of the case."[60]

As to costs, Sun objects to the reasonableness of Command's request and attempts to distinguish Command's case law. Sun claims that, in August 2015, Command had only expended $43,676 in attorney fees and litigation expenses. Even so, Command did not perform the reconciliation and did not pay Sun the undisputed sums. At the latest, the amount owed was ascertainable at that point, and if Command is entitled

---

[60] Rec. Doc. No. 151, p. 5.

to any costs, it is only those incurred through that time. If the Court finds that Command is entitled to any costs under Art. 22.1 of the Subcontract, which Sun contests, then it should only be the percentage of what Command was awarded by the jury that directly relates to Sun's default.

The Court has reviewed all of the evidence and affidavits submitted by Command and has carefully considered the arguments of counsel in memoranda and those made at oral argument. The Court finds generally that the hours expended and the rates charged are reasonable considering the complexity of this case and the skill and expertise of the lawyers as set forth above. The Court, however, agrees with Sun that the hours billed, particularly in the month that Command changed counsel, should be adjusted downward. Command's business decision to change counsel a few months prior to trial is not the fault of Sun, and Sun should not be responsible for the time required to bring Command's new counsel "up to speed" on this case. Applying the *Johnson* factors, and considering some evidence of duplicative or excessive billing as set forth by Sun, the Court finds the total fee request should be adjusted downward by 25 percent (25%).

As to costs, the Court agrees that Sun should not be taxed with the costs of copying the file to facilitate the change in counsel. Accordingly, this portion of costs will be subtracted. Further, the law discussed above establishes that both parties achieved some success and are prevailing parties for purposes of costs. Thus, the Court finds that the costs should be taxed equitably, reducing Command's costs request by 25 percent

(25%) after removal of the copying charge and the erroneously billed postage amount of $864.80.[61]

## C. Sun's Request for Pre-Judgment Interest

Sun seeks prejudgment interest on the amount awarded in the *Judgment* from, at the latest, August 2015 when the project was completed and the undisputed amount was due. Command argues that Sun is not entitled to pre-judgment interest. Command maintains that the same issue impacted its efforts to reconcile and resolve this case, and Sun's position is without merit. Command argues that the Fifth Circuit, interpreting Louisiana law, has held that interest is recoverable on a contractual debt from the time the debt becomes due unless otherwise stipulated.[62] The jury found that Sun agreed it would receive no payment until it had reconciled its account with Command's damages and backcharges, a process that Command claims continues to this day. Thus, the amount owed was not even ascertainable[63] to Command until after the jury determined the amount of damages Sun caused Command due to its default. Thus, Command contends the Court should deny any request by Sun seeking pre-judgment interest until such a time that the final amount Command actually owes Sun becomes settled, which requires resolution of the issues of attorney fees and costs.

Sun rejects Command's contention that Sun is not entitled to pre-judgment interest because the amount owed remains unascertainable. Sun claims that Command is

---

[61] Counsel for Command advised the Court by letter that it has identified $864.80 billed erroneously as postage costs. See attachment.

[62] *See Cableguard Sys., Inc. v. Mid-Continent Cas. Co.*, 73 Fed. Appx. 28, 33 (5th Cir. 2003)(citations omitted).

[63] *See IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 93-1637 (La. App. 1st Cir. 5/23/95), 657 So.2d 282, 315 (holding that interest is not due on a debt until the amount is ascertainable).

attempting to backcharge Sun for every possible encounter of attorney fees when, realistically, Command should have performed the reconciliation in August 2015 at the time that Command had only expended $43,676 in attorney's fees and litigation expenses. At the latest, the amount owed was ascertainable at that time, and Sun is entitled to pre-judgment interest from August 2015 until paid.

In a diversity case, state law governs prejudgment interest.[64] Under Louisiana law, prejudgment interest is a component of compensatory damages.[65] Prejudgment interest is necessary to the plaintiff's full compensation because it represents the "use" value of the amount owed.[66] Indeed, the plaintiff is ordinarily the party prejudiced by a lengthy litigation process due to the loss of use of its funds.[67]

Louisiana Civil Code Article 2000 governs the date from which interest begins to run in this case. It states: "When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due ... ."[68] Article 2000 also states that, in the absence of an agreement between the parties, the rate of interest is fixed by La. R.S. 9:3500.

In Louisiana, a contract claim bears interest from judicial demand or from such earlier date when the claim became ascertainable and due.[69] Sun's claim against Command became due in August 2015 when the project was completed and approved by the DOTD. Accordingly, the only remaining issue is whether the amount was

---

[64] *Concise Oil & Gas v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1472 (5th Cir. 1993).
[65] *Trans–Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish*, 583 So.2d 443, 457–59 (La. 1991).
[66] *Id.* at 458.
[67] *Id.*
[68] *See Goodman v. Lee,* 78 F.3d 1007, 1014 (5th Cir. 1996).
[69] *Concise Oil & Gas*, 986 F.2d at 1472; *Trans–Global Alloy*, 583 So.2d at 459.

"ascertainable" at that time.

In order for interest to run from the date of breach in Louisiana, it is not necessary that the precise amount of the damages be liquidated or absolutely certain.[70] However, an amount owed is not "ascertainable" when the determination of the amount is "highly complicated."[71] In *Martin v. Heublein,* the court found this determination to be "complicated" in a suit for lost profits where the plaintiff relied on expert testimony to demonstrate the extent of the damages.[72] Other courts have found that an amount is not ascertainable when a "good faith justiciable controversy" existed about the amount due.[73]

Nevertheless, some courts have found that just because an amount due is disputed or challenged does not mean that amount is not ascertainable for purposes of determining prejudgment interest. For example, in *Bank One, N.A. v. A. Levet Properties Partnership*,[74] parties disputed the overpayment of rent due under a lease contract. The court stated:

> The amount of overpayment was ascertainable in November 2002: the amount owed under the lease was $20,734.54 per month, and Bank One erroneously paid $25,301.20 per month. Thus, Bank One overpaid $4,566.66 each month for a total of $232,899.66. **A. Levet's initial challenge to the amount owed under the lease does not mean that the amount was not ascertainable for the purpose of calculating prejudgment interest**. *See Texaco Trading and Transp.*, 1996 WL at *3 (finding that defendant's questioning of the accuracy of plaintiff's demand cannot serve to penalize plaintiff in determination of accrual of interest).
>
> Because Bank One demanded reimbursement for overpaid amounts in November 2002 and the amount owed was ascertainable at that time,

---

[70] *Martin v. Heublein, Inc.*, 943 F.Supp. 637, 643 (E.D.La. 1996).
[71] *Trans–Global*, 583 So.2d at 459; *Concise Oil & Gas*, 986 F.2d at 1472; *IP Timberlands Co.*, 657 So.2d at 315–16.
[72] 943 F.Supp. at 643.
[73] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Circle, Inc.*, 915 F.2d 986, 992 (5th Cir.1990).
[74] No. 03-1373, 2004 WL 1661204 (E.D. La. July 22, 2004).

interest began to accrue in November 2002.[75]

Applying the law to the facts of this case, the Court finds that, as of August 2015, Command should have paid the undisputed amount owed to Sun. While the jury did find that the subcontract was modified in April 2014 so that Sun would not receive any further payments until the work was 100% complete and the account reconciled, it also found that Command did not otherwise have reasonable cause to withhold payments to Sun after Sun returned in May 2014. The Court does not deem these two findings inconsistent considering Command had a legitimate dispute regarding breach of the subcontract, but Command could have paid the undisputed amount due at the completion of the project and maintained its claim for breach of contract.

In *National Union v. Circle*,[76] the Fifth Circuit rejected an argument similar to Command's argument that the amount was not due or ascertainable because reconciliation was required to reach this number. In *National Union*, the Assureds argued that the district court should have awarded interest from the date of judgment, not from the date of judicial demand. The Assureds also argued that Louisiana jurisprudence permits such an award only for claims that are fixed and definitive, not for claims like this one that became fixed only upon judgment.[77] The Fifth Circuit disagreed:

> We do not read the cases or the Louisiana Civil Code that way. "[L]egal interest is due at least from the date of judicial demand on a claim for damages arising out of breach of contract, regardless of whether the precise amount of the claim is unliquidated, disputed or not ascertainable with certainty at the time suit is filed." Indeed, a claim arising out of a breach of contract, whether liquidated or not, bears legal interest from the date of judicial demand or from such earlier date when the claim became

[75] *Id.* at *4 (emphasis added).
[76] 915 F.2d 986 (5th Cir. 1990).
[77] *Id.* at 992.

ascertainable and due. In this case, because a good faith justiciable controversy existed about the amount of additional premiums due, the amount due under the Retention Premium Agreement was not "liquidated," i.e., not fixed or ascertainable. Therefore an award of interest from the date that the retrospective premium was due would not be proper. The award of interest from the date of judicial demand, however, was proper.[78]

Based on the same reasoning and analysis of the *National Union* court, this Court finds proper an award of prejudgment interest from the date of judicial demand. The Court rejects Command's argument that the account could not have been reconciled and at least partial payment made to Sun until the completion of all litigation matters.

**D. Credit for Merchant's Cost of Defense Settlement**

Prior to trial, Merchants made a payment of $35,000.00 to Command to settle the claims between Merchtants and Command. Sun claims it is entitled to a $35,000.00 credit in light of this payment by Merchants. Merchants supplied Sun with the performance and payment bonds on the project. Sun contends that, pursuant to the suretyship relationship between itself and Merchants, Merchants was solidarily bound to Command for Sun's obligations related to the project. Further, Sun points to Command's Cross-Claim against Sun and Merchants wherein Command sought claims from them "*in solido*."[79] Sun cites the decision by the Louisiana Supreme Court in *Wall v. American Employers Ins. Co.*, where in the Court held that, in the case of transaction, compromise, or settlement between the obligee and one of the solidary obligors, the liability of the other solidary obligors is reduced in the amount of the proportion of that obligor.[80] Sun also cites the Louisiana Supreme Court's decision in *Fertitta v. Allstate Ins. Co.*,[81] where the

---

[78] *Id.* (citations omitted).
[79] Rec. Doc. No. 13, p. 7, ¶ 14.
[80] 386 So.2d 79 (La. 1980).
[81] 462 So.2d 159 (La. 1985).

court held:

> Because the two debtors are solidarily bound, the creditor can demand performance of the entire obligation from either obligor as if he were the sole debtor. Moreover, payment (or partial payment) to the creditor by one debtor exonerates the other debtor from having to make that payment to the creditor (although the debtor who pays may have resulting rights against the other debtor). Stated otherwise, when the liability is solidary, the creditor cannot collect more than the full amount of the debt for the single or combined payments of the debtors.[82]

Sun contends that a legal compromise occurred when Merchants and Command entered into a settlement. Accordingly, Sun contends that the $35,000.00 paid to Command by Merchants relieves Sun of the liability of the $35,000.00 paid by Merchants. Under *Fertitta*, Sun argues Command cannot collect more than the amount of debt owed by Sun and Merchants; thus, Sun is entitled to a credit on the amount Merchants paid to Command for Merchants' dismissal from this case.

Command opposes Sun's claim that it is entitled to a credit for the Merchants payment and argues that, as surety, Merchants only guarantees Sun's obligation. In other words, because Command was holding funds due to Sun for work performed, subject to Command's offset claims, the bond would only come into effect in the event that Command's backcharges from Sun's breach of contract exceeded the stipulated amount of $457,629.53 for Sun's scope of work.[83] In light of this fact, Command contends that Merchants approached Command about obtaining a release because Merchants believed the $35,000.00 it would pay in settlement was less than the cost of a four-day jury trial. Command contends the result of the trial justified Merchants'

---

[82] *Id.* at 163.
[83] Rec. Doc. No. 150-1, p. 4, Exhibit C.

concerns and also proves there was never a co-existent obligation of Sun's that Merchants would be called upon to pay. Thus, Command contends Sun is not entitled to any credit for Merchants' cost-of-defense payment on an obligation that was proven not to exist under the bond.

Further, Command contends that Louisiana law on suretyship also establishes that Sun is not entitled to a credit for Merchants' settlement because the law provides that settlements dealing with the principal automatically benefit the surety, but the converse is not true.[84] Further, Merchants would typically be protected through subrogation; thus, if Merchants had actually made a payment on Sun's obligation, Merchants would be able to fully recover from Sun the extent of its payment under the law of subrogation. Nevertheless, Merchants specifically waived its right to subrogation from Sun for the payment made.[85] As such, Command argues this waiver ensures that Sun is not as risk of double-payment. Command further argues that granting Sun a credit when Merchants never paid any aspect of Sun's obligation to Command would result in a windfall to Sun as the language of the release makes clear that "[t]he parties further recognize that the Payment is not intended by Merchants to release, settle, waive, alter, limit, modify, or lessen the obligations owed by Sun, if any, to command."[86]

The Court finds in favor of Command on this issue. Applying the laws of suretyship to the facts of this case, in addition to the clear expression of Merchants in the Release that the settlement was purely a cost-of-defense decision and not intended as payment

---

[84] Rec. Doc. No. 150-1, p. 18.
[85] *Id.* at p. 19, Exhibit E. Release of Claim, p. 2.
[86] *Id.*, quoting Exhibit E. Release of Claim, p. 2.

of any obligation of Sun to Command, the Court cannot find that Sun is entitled to a credit for the $35,000.00 Merchants paid to Sun. The Court agrees that, only in the event that Command was awarded an amount greater than the amount remaining on the subcontract would Merchants' bond obligations be triggered. This did not happen, and Sun is not entitled to a credit for Merchants' settlement payment.

## III. CONCLUSION

For the reasons set forth above, the *Motion for Judgment as a Matter of Law Under Rule 50(b) or Alternatively for a New Trial Under Rule 59*[87] by Command is DENIED. The *Motion For Attorney Fees and Motion to Tax Costs*[88] is granted as adjusted by the Court's ruling. Sun is awarded pre-judgment interests in accordance with the Court's ruling; however, Sun is denied a credit for Merchants' settlement payment as set forth above.

The parties shall submit a proposed *Order* awarding these itemized amounts in accordance with the Court's ruling on or before November 3, 2017.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>October 24, 2017</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[87] Rec. Doc. No. 156.
[88] Rec. Doc. No. 150.